UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Johnny Frederic Heurung,                    Case No. 23-cv-3749 (PAM/LIB)

        Petitioner,

v.                                          **REPORT AND RECOMMENDATION**

Jared Rardin,

        Respondent.

Pursuant to a general referral made in accordance with 28 U.S.C. § 636 and Local Rule 72.1, this matter comes before the undersigned United States Magistrate Judge upon Petitioner Johnny Frederic Heurung's Amended Petition for a Writ of Habeas Corpus. [Docket No. 6]. Finding no hearing necessary, the Court issues the present Report and Recommendation.[1]

Petitioner is currently imprisoned at the Federal Medical Center in Rochester, Minnesota ("FMC Rochester"). He has brought a petition for a writ of habeas corpus under 28 U.S.C. § 2241 claiming the Federal Bureau of Prisons ("BOP") denied him his right to due process by failing to hold a proper hearing when the BOP determined that he violated the conditions of his home confinement and transferred him back to a more traditional prison setting. (See Amended Petition [Docket No. 6]). Petitioner asks the Court to force the BOP to return him to home confinement or, alternatively, require the BOP to conduct a hearing to determine if he violated the conditions of his home confinement. Petitioner also claims that the BOP wrongfully sanctioned him with the loss of forty-one days of good-time credits without proper due process.

---

[1] Upon review of the present record, the Court finds that a hearing is unnecessary in this action because a hearing on the present Petition would not aid the Court in its consideration of the present Petition. See Wallace v. Lockhart, 701 F.2d 719, 730 (8th Cir. 1983) (observing that dismissal of a "habeas petition without a hearing is proper . . . where the allegations, even if true, fail to state a cognizable constitutional claim, where the relevant facts are not in dispute, or where the dispute can be resolved on the basis of the record").

For the reasons discussed herein, the Court recommends that Heurung's Amended Petition for Writ of Habeas Corpus, [Docket No. 6], be **DENIED**, and this action be **DISMISSED with prejudice**. With respect to the first claim regarding Petitioner's transfer from home confinement back to a more traditional prison setting, habeas corpus is not the proper method to address Petitioner's claims for relief. With respect to Petitioner's second claim regarding good-time credits, Petitioner has not established that the BOP violated his due process rights. Accordingly, Petitioner is not entitled to relief on either claim.

### I.  Background

Petitioner has been serving a prison sentence since 2013, when the United States District Court for the Western District of Missouri sentenced him to 216 months of imprisonment to be followed by three years of supervised release for Conspiracy to Commit Securities Fraud and Wire Fraud in violation of 18 U.S.C. §§ 371 and 1343. (Public Information Inmate Data as of 04-24-2024 [Docket No. 15-1] at 2]). Petitioner has a long history of medical issues that have required dozens of hospital trips during his incarceration, and he has recently suffered a stroke which he indicates will likely leave him permanently in need of heightened level of medical care. (See Inmate History [Docket No. 15-2]; Medical Summary [Docket No. 17-1]). The BOP considered him for alternative custody arrangements under the CARES Act and, in 2023, transferred him to home confinement to live in his own apartment under several conditions, including that his sister would help him get to all required check-ins and appointments. (See Exhibit A [Docket No. 6-1]).

During his home confinement, Petitioner failed to appear for a number of his scheduled check-in, including an in-person check-in and urinalysis on August 14, 2023. (James Decl. [Docket No. 15] ¶ 21). This, in turn, caused the BOP to charge Petitioner with multiple violations of his custody conditions. (Incident Reports [Docket No. 15-9] at 2). Petitioner does not refute that he

2

failed to appear at required check-ins, but he alleges that he failed to appear at said check-ins because his sister was not always available to transport him, and he was without the means to provide for his own transportation to required appointments due to delays in receiving social security payments. (See Amended Petition [Docket No. 6]).

As a result of his failure to appear for the in-person check-in and the urinalysis, Petitioner was transferred from home confinement to a residential reentry center ("RRC"). (James Decl. [Docket No. 15] ¶ 27). Petitioner remained at the RRC from August 23, 2023, until October 19, 2023, when it was determined that the RRC was unable to meet his medical needs. (Id. ¶¶ 27–29). The BOP determined that the best course of action was to transfer Petitioner to FMC Rochester. (Id. ¶¶ 28–29).

Petitioner's removal from home confinement was not the only consequence of his failure to make scheduled appointments while on home confinement. (See Amended Petition [Docket No. 6]). On August 22, 2023, the BOP held a hearing on the last violation Petitioner received while in home confinement. (James Decl. [Docket No. 15] ¶¶ 19–27).[2] At the hearing, Petitioner declined staff representation, declined to call any witnesses, and declined to present any documentation evidence in support of his defense. (Id.; Center Discipline Committee Report [Docket No. 15-12]). The Discipline Hearing Officer determined that the greater weight of the evidence demonstrated that Petitioner had committed the alleged violation, and Petitioner was sanctioned with the loss of forty-one days of good-time credits. (James Decl. [Docket No. 15] ¶¶ 25–26; Center Discipline Committee Report [Docket No. 15-12]).

---

[2] Inmates on home confinement remain subject to the disciplinary rules established by the BOP, and violation of those rules can result in sanctions, including loss of good-time credits. See 18 U.S.C. § 3624(g).

3

**II. Analysis**

In his present Amended Petition, Heurung presents two separate challenges arising out of the same underlying incident. (See Amended Petition [Docket No. 6]). Petitioner first challenges the BOP decision to transfer him out of home confinement. Petitioner also argues that the BOP violated his due process rights in sanctioning him with the loss of forty-one days of good-time credits.

   A. **Transfer From Home Confinement**

In challenging the BOP's decision to transfer him out of home confinement, Petitioner conflates home confinement and supervised release. Petitioner throughout his pleadings has mischaracterized his placement in home confinement as being a form of early supervised release. From the vantage point of the person serving home confinement, the confusion is understandable, if ultimately inaccurate. Both home confinement and supervised release, obviously, entail no longer being in typical prison setting. Moreover, the person serving either under home confinement or supervised release will be subject to various conditions, and a violation of those conditions can result in the person being returned to prison.

As a matter of law, however, home confinement and supervised release are materially distinct. Transfer to home confinement is, based on the decision of the BOP, which usually may place a prisoner in home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2); see also 18 U.S.C. § 3621(b) (investing the BOP with discretion over placement decisions). The BOP establishes the conditions of that home confinement, and the BOP determines whether placement on home confinement is no longer appropriate, just as the BOP determines whether placement at a specific prison is no longer appropriate for a particular prisoner.

4

Supervised release, by contrast, is not a form of BOP custody. Supervised release is what follows <u>after</u> a term of imprisonment. 18 U.S.C. § 3583(a). Unlike home confinement, supervised release is not simply a matter of the BOP relocating a prisoner from one facility to another. By the time that a prisoner has been placed on supervised release, his term of imprisonment has been completed. The conditions imposed on a person while on supervised release are imposed by the Court at the time of sentencing. <u>See</u> 18 U.S.C. § 3583(d). The same sentencing Court determines whether a person has violated the terms of supervised release and what the consequences of that violation will be. <u>See</u> <u>Id.</u>

Notwithstanding Petitioner's confusion, Petitioner was plainly on home confinement, not supervised release, at the time of the alleged disciplinary violation. The documentation establishing Petitioner's transfer to home confinement indicates that he was being considered for home confinement under the Cares Act and that he was not eligible for supervised release until May 11, 2028. (Exhibit A [Docket No. 6-1]). Indeed, the BOP could not have decided to transfer Petitioner to supervised release sooner—the end-date of prisoner's custodial term was determined by the sentencing judge and cannot be altered by the BOP. What the BOP can do—and what the BOP did do—is transfer Petitioner between facilities, including by using Petitioner's home as a custodial facility. The BOP has full discretion to transfer Petitioner in such a manner between places of incarceration. <u>See</u> 18 U.S.C. § 3621(b).

"Home confinement is not release from custody . . . it is simply one of several forms of BOP custody." <u>Johnson v. Birkholz</u>, No. 21-cv-2017 (PJS/LIB), 2022 WL 3135304, at *1 (D. Minn. Aug. 5, 2022). Thus, Petitioner's claim that he was wrongfully transferred from home confinement to a more traditional prison institution is a challenge to the conditions of his

5

confinement, not a challenge to the length or duration of his confinement. See Id. This is fatal to Petitioner's habeas claim here.

If a prisoner, like Petitioner here, "is not challenging the validity of his conviction or the length of his detention, such as a loss of good time, then a writ of habeas corpus is not the proper remedy." Kruger v. Erikson, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam), see also Spencer v. Haynes, 774 F.3d 467, 469–70 (8th Cir. 2014). Thus, a prisoner, like Petitioner, claiming that he should be detained at home or in a different facility ultimately is challenging only the conditions of his confinement. See, e.g., Johnson, 2022 WL 3135304, at *1. Habeas corpus is not an appropriate procedural vehicle for such a claim. See Spencer, 774 F.3d at 469–70.

In short, Petitioner's challenge to the conditions of his confinement is not a cognizable habeas claim. Therefore, to the extent Heurung's Amended Petition challenges his transfer out of home confinement, the undersigned recommends that Heurung's Amended Petition, [Docket No. 6], be **DENIED**.

### B.  Good-time credit

As observed above, Petitioner also challenges his loss of forty-one days of good-time credits arguing that the BOP violated his due process rights in sanctioning him with the loss of said good-time credit. In support of this challenge, Petitioner appears to argue that although the BOP charged a violation against him, the BOP failed to hold a hearing on the charged violation as required by 28 C.F.R. § 541. (See Amended Petition [Docket No. 6] at 3–4).[3]

---

[3] Petitioner's challenge here is somewhat contradictory. He appears to argue that the BOP failed to adjudicate the discipline violation charges against him, (see Amended Petition [Docket No. 6] at 4), but he also acknowledges that the loss of good-time credits was a result of his "CDC [Center Discipline Committee] hearing." (Reply [Docket No. 17] at 6). This contradiction may be attributable to Petitioner's incorrect belief that he was on supervised release. If he was on supervised release and he violated the terms of his supervised release, then he would have had proceedings before the sentencing Court. As already explained, however, Petitioner was not on supervised release, and he was therefore not entitled to any such hearing before the sentencing Court.

6

The BOP has statutory authority to penalize inmates, including those inmates placed on home confinement, who violate the conditions of their prerelease custody. 18 U.S.C. § 3624(g)(5). But prisoners have a protected liberty interest in good-time credits, which may not be revoked without the prisoner receiving due process of law. Wolff v. McDonnell, 418 U.S. 539, 556–557 (1974).

In the present case, Petitioner's claim is properly raised through a habeas petition because the revocation of his good-time credits results in a lengthier duration of his custody and not merely change in the conditions of his custody. Preiser v. Rodriguez, 417 U.S. 475, 478 (1973). But Petitioner's claim that his due process rights were violated fails on the merits.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556. In essence, the Due Process Clause guarantees inmates minimum procedures prior to revocation of good-time credits. Id. This is because a prisoner's strong interest in avoiding arbitrary loss of good-time credits must be balanced against the legitimate institutional need of prisons to enforce discipline and maintain safety without having to satisfy overly burdensome administrative requirements. Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 454–455 (1985).

Regarding the due process the prisoner must receive at a BOP disciplinary hearing, the Supreme Court summarized the requirement as follows:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

7

Hill, 472 U.S. at 454. Those very requirements are codified in 28 C.F.R. § 541—the same regulation that Petitioner erroneously claims the BOP failed to follow. (See Amended Petition [Docket No. 6] at 3)

When the BOP follows these procedures, the standard for judicial review of the substantive decision rendered by the BOP is highly differential—the BOP's decision must be supported by "some evidence on the record." Hill, 472 U.S. at 454. Thus, the Court need not examine the entire record, assess the credibility of witnesses, or weigh the evidence, but solely look whether "any evidence in the record . . . support[s] the conclusion reached by the disciplinary board." Id. at 455–456.

Here, Petitioner was initially transferred to home confinement on June 8, 2023. (Inmate History [Docket No. 15-2] at 1). Before he was transferred to home confinement, Petitioner agreed to abide by certain conditions, including the requirement that he accept all calls from supervising staff, submit to urinalysis upon request, and appear at regular check-in appointments. (Condition of Home Confinement [Docket No. 15-5]; Community Based Program Agreement [Docket No. 15-6]).

Petitioner incurred violations soon after being transferred to home confinement. (Inmate History [Docket No. 15-2] at 1). By July 6, 2023, Petitioner had already twice failed to show up to required check-in appointments. (Individualized Program Plan [Docket No. 15-7] at 3). By July 27, 2023, he had also failed to answer calls, failed to show up to appointments, and had even been considered an escapee for under 4 hours. Id.

Petitioner does not dispute that he failed to appear as required for his urinalysis and his regular check-in appointments. (See Amended Petition [Docket No. 6] at 2–3; Reply [Docket No. 17] at 1–5). Petitioner readily admits that he violated the conditions of his home confinement by

missing multiple appointments. (See Amended Petition [Docket No. 6] at 2–3; Reply [Docket No. 17] at 1–5).[4]

At 11:00 a.m. on August 21, 2023, the BOP provided Petitioner with a copy of Incident Report No. 3816068, describing his failure to show up to provide a urine sample for urinalysis on August 14, 2023. (Incident Report [Docket No. 15-9] at 1). At 12:42 p.m. on August 22, 2023, the BOP held a disciplinary hearing regarding Incident Report No. 3816068. (Id. at 2). Petitioner did not request a staff representative or call any witnesses, despite the BOP officer informing him of his right to do so. (Center Disciple Committee Report [Docket No. 15-2] at 1). At the disciplinary hearing, Petitioner was also advised of his right to present document and evidence. (See Id.). On August 23, 2024, a BOP Disciplinary Hearing Officer ("DHO") reviewed the hearing's findings against Petitioner and certified compliance with the disciplinary process. (See Id.).

On August 23, 2023, the DHO issued a report which concluded that the greater weight of the evidence demonstrated that Petitioner had committed the violation and sanctioned Petitioner to the loss of forty-one days of good-time credits. (Id.). The DHO's report included specific findings of fact and detailed the specific evidence upon which they relied in reaching their conclusions. (Id.).[5] The DHO's report was delivered to Petitioner on August 24, 2023. (Id.).

The record now before the Court demonstrates that the BOP provided Petitioner with all the due process required by the Due Process Clause as it relates to Incident Report No. 3816068 and the loss of forty-one days of his good-time credits. On August 21, 2023, the BOP provided

---

[4] Petitioner asserts that his violations were not by choice—he simply lacked the means to pay for transportation when his sister was not available. (Amended Petition [Docket No. 6] at 2–3; Reply [Docket No. 17] at 2–6). The BOP staff did not seem to have disputed this during the disciplinary proceedings. Nor has Responded disputed Petitioner's explanation in this habeas proceeding. If Petitioner's explanation is indeed accurate, then Petitioner's case is a sympathetic one. Nevertheless, for all the reasons discussed herein, there is more than "some evidence" supporting the decision that Petitioner failed to make mandatory appointments.
[5] The DHO's report also advised Petitioner of his right to appeal the disciplinary finding, but Petitioner did not avail himself of that right. (Id.).

9

Petitioner with the required advanced written notice of the disciplinary charges more than twenty-four hours in advance of the disciplinary hearing. See Wolff, 418 U.S. at 564 (requiring advance notice of "no less than 24 hours"). The BOP also provided Petitioner with the opportunity to call witnesses and present evidence, although Petitioner did not avail himself of these opportunities. (See Center Discipline Committee Report [Docket No. 15-12]). The BOP also provided Petitioner with a written statement of the evidence relied on and the reasons for the disciplinary action. (See Id.).

The record now before the Court also demonstrates that at least "some evidence on the record" supports the disciplinary board's decision that the greater weight of the evidence supported the conclusion that Petitioner failed to appear at a scheduled appointment to provide a urinalysis sample. (See Center Discipline Committee Report [Docket No. 15-12]). As the DHO's report noted, Petitioner—during the disciplinary hearing—admitted that he failed to appear at the urinalysis appointment. (Id. at 1). Petitioner admitted his failure to present for the urinalysis appointment when he was explaining the reasons why he failed to present for said appointment. (Id.). The DHO's report also noted that the RRC staff had reported that Petitioner failed to appear for his in-person urinalysis on August 14, 2023, and August 15, 2023. (Id. at 3). This represents at least "some evidence on the record" which supports the disciplinary board's decision.

In short, the BOP provided Petitioner with all the due process required by the Due Process Clause.[6] Petitioner was provided with sufficiently advanced notice of the disciplinary proceeding;

---

[6] Notably, Petitioner does not argue that the BOP failed to provide any of the required due process. (See Amended Petition [Docket No. 6]; Reply [Docket No. 17]). Instead, Petitioner seems to argue that he is entitled to more due process than is required based on his belief that he was on supervised release rather than having been transferred to home confinement. (See Amended Petition [Docket No. 6]; Reply [Docket No. 17]). As already discussed, however, Petitioner was not on supervised release.

10

an opportunity to call witnesses and present evidence in support of his defense; and a written statement by fact finder of the evidence relied upon and the reasons for the disciplinary action.

## III. Conclusion

In summation, Petitioner's challenge to his transfer from home confinement to a more traditional prison setting is not cognizable in this habeas proceeding, and his challenge to the loss of good-time credits fails on the merits. Accordingly, the habeas petition should be denied, and this matter should be dismissed with prejudice.

Therefore, based on the foregoing, and on all of the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT**:

1. The Amended Petition for a writ of habeas corpus of petitioner Johnny Frederic Heurung, [Docket No. 6], be **DENIED**; and

2. This matter be **DISMISSED with prejudice**.


Dated: October 17, 2024                     s/Leo I. Brisbois
                                            Hon. Leo I. Brisbois
                                            United States Magistrate Judge


**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. See Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).